**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION**

| | |
|---|---|
| IAN PASTORIUS AND BRIAN STARR, Individually and on behalf of all others similarly situated; <br><br> Plaintiffs, <br><br> vs. <br><br> LOWE'S HOME CENTERS, INC. and LOWE'S HIW, INC., <br><br> Defendants. | § CASE NO. 11-cv-00307 <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § |

**PLAINTIFF'S UNOPPOSED MOTION FOR FINAL APPROVAL OF SETTLEMENT
AND FINAL CERTIFICATION OF SETTLEMENT CLASS**

Michael A. Josephson, Esq.
FIBICH, HAMPTON, LEEBRON, BRIGGS
& JOSEPHSON, L.L.P.
1150 Bissonnet
Houston, Texas 77005
Telephone: (713) 751-0025
Facsimile: (713) 751-0030

Richard J. (Rex) Burch, Esq.
BRUCKNER BURCH, P.L.L.C.
8 Greenway Plaza, Suite 1500
Houston, Texas 77002
Telephone: (713) 877-8788
Facsimile: (713) 877-8065

C. Ryan Morgan, Esq.
*Admitted Pro Hac Vice
MORGAN & MORGAN, P.A.
20 North Orange Avenue, 16th Floor
P.O. Box 4979
Orlando, Florida 32802-4979
Telephone: (407) 420-1414
Facsimile: (407) 420-5956

**ATTORNEYS FOR PLAINTIFFS**

# **TABLE OF CONTENTS**

I. INTRODUCTION. ........................................................................................................... 1-2

II. PROCEDURAL BACKGROUND ........................................................................................ 2

III. THE SETTLEMENT AND NOTICE PROCESS .................................................................... 3-7

  A. The Plaintiff Class and the Rule 23 Class. ........................................................ 3-4

  B. The Settlement Amount. .................................................................................... 4-5

  C. Payments to Named Class Representatives. .......................................................... 5

  D. Fees, Costs and Expenses of the Administrator. .................................................... 5

  E. Allocation to Class Members. ............................................................................ 5-6

  F. Administration of Notice, Opt-Out, Opt-In and Objections Process. .................... 6

  G. Payments to Settlement Class Members. ................................................................ 7

  H. Release of Claims. .................................................................................................. 7

IV. COLLECTIVE ACTION AND CLASS ACTION SETTLEMENT AND APPROVAL PROCEDURE. ..... 7-8

V. THIS COURT SHOULD CERTIFY THE CLASSES AND FULLY APPROVE THE SETTLEMENT .... 8-13

  A. The Settlement is Fair, Reasonable and Adequate. ........................................... 8-10

  B. The Settlement Resulted from Non-Collusive, Arm's-Length and Informed Negotiations. .................................................................................................. 10-11

  C. The Class Responded Positively to the Settlement. ........................................ 11-12

  D. The Incentive Payments to the Named Plaintiffs Are Reasonable. ................. 12-13

  E. The Proposed Notice Was Reasonable. ................................................................ 13

VI. CONCLUSION. ............................................................................................................... 13

## **TABLE OF AUTHORITIES**
**FEDERAL CASES**

*Churchill Village, LLC v. Gen. Elec.*,
361 F.3d 566, 575 (9th Cir. 2004)……………………………………………………….13

*Davis v. Abercrombie & Fitch Co.*,
2008 WL 4702840 (S.D.N.Y. Oct. 23, 2008......……………………………………………….9

*Gilliam v. Montgomery Ward & Co., Inc.*,
121 F.3d 698 (4th Cir. 1997)……………………………………………………………...9

*Hanlon v. Chrysler Corp.*,
150 F.3d 1011, 1026 (9th Cir. 1998)…….……………………………………………………..8

*In re Apollo Group Inc. Securities Litigation*,
2012 WL 1378677, *3 (D. Ariz. April 20, 2012)     ……………………………………………12

*Jacob Tankersley, et al. v. Lowe's Home Centers, Inc.*,
Case No. 5:09-CV-00142-WTH-GRJ (M.D. Fla. Aug. 2010)…………………………………….4

*Juback v. Radioshack Corp.*,
2009 WL 1259990 (M.D. Fla. May 6, 2009) ……………………………………………………9

*Lynn's Food Stores v. United States*,
679 F.2d 1350, 1353, 1355 (11th Cir. 1982)…………………………………………………...7

*McClain v. Lufkin Ind., Inc.*,
No. 9:97CV63, 2009 WL 5814124 at *4 (E.D. Tex. Dec. 22, 2009)……..…………………12-13

*Michael Meyer v. Lowe's HIW, Inc.*,
Case No. CV-09-08354-DDP (RZx) (C.D. Cal. Feb. 2011)  …………………………………….4

*Mohney v. Shelly's Prime Steak, Stone Crab &Oyster Bar*,
2009 WL 5851465 (S.D. N.Y. March 31, 2009) …......………………………………………….12

*Mullins v. Target Corp.*,
2011 WL 1399262 (N.D. Ill. Apr. 13, 2011)…….……………………………………………..9

*Officers for Justice v. Civil Serv. Comm'n*,
688 F.2d 615, 624 (9th Cir. 1982)…..……………………………………………………...10

*Phillips Petroleum Co. v. Shutts*,
472 U.S. 797, 811-12 (1985)………………………………………………………………13

*Quintanilla v. A&R Demolition, Inc.*,
No. 04-cv-1965, 2008 U.S. Dist. LEXIS 37449 (S.D. Tex. May 7, 2008)……………..……7-8

*U.S. Dep't of Labor Wage & Hour Div. Op. Ltr.,*
No. FLSA 2006–30 (Sept. 8, 2006)……………………………………….…………………….9

*Westerfield v. Washington Mutual Bank*,
2009 WL 5841129 (S.D.N.Y. 2009)……………………………………………………………11

*Zachary Torres, et al. v. Lowe's HIW, Inc.*,
Case No. 09-06962-DDP (RZx) (C.D. Cal.)………..…………………………………………….4

## STATUTES

Fair Labor Standards Act ("FLSA"), 29. U.S.C. §216(b)………………….…...…… *passim*

## FEDERAL RULES

Fed.R.Civ. P. 23……………………….……………………………………...…… *passim*

## MISCELLANEOUS AUTHORITIES

Art. 19, N.Y. Lab. Law § 663(3)……………………………………………………………...3

Hybrid Class Actions, Dual Certification, and
Wage Law Enforcement in the Federal Courts,
Berkeley J. Emp. & Lab. L., 269, Volume 29 (2008)…………….…………………………….11

Manual for Complex Litigation Fourth
(Fed. Judicial Center 2004), § 21.6 at 309…..……………….……………………………………8

Manual for Complex Litigation,
§30.42 (West Group 2001)………..……………………………………..………………..13

**I.     INTRODUCTION.**

Ian Pastorius and Brian Starr (collectively, "Plaintiffs") seek final certification and approval of two settlement classes of Loss Prevention Managers ("LPMs") employed by Lowe's Home Centers, Inc. and/or Lowe's HIW, Inc. (collectively, "Lowe's" or "Defendants"). This Court previously preliminarily approved this settlement and conditionally certified the classes on January 26, 2012 and ordered the Parties to issues notice to the class members, informing them of this case and their rights under the proposed settlement. [ECF No. 36]

The claims in this case arose from Defendants' classification of its LPMs as exempt from the overtime provisions of the Fair Labor Standards Act (FLSA) and equivalent state wage and hour laws. Plaintiffs seek final approval of their settlement, which includes:

1.     Defendants' reclassification of the LPM position as non-exempt (such that LPMs now receive overtime pay);

2.     Defendants' agreement to pay up to Six Million One Hundred and Seventy Five Thousand dollars ($6,175,000.00) (the "Maximum Settlement Amount") to compensate class members for unpaid wages;

3.     Incentive awards of $2,500.00 to each named plaintiff (who will execute general releases in favor of Defendants) from the Maximum Settlement Amount;

4.     Payment to Kurtzman Carson Consultants, who acted as the settlement administrator from the Maximum Settlement Amount; and

5.     Payment of attorney's fees and costs in an amount not to exceed 33 1/3% of the Maximum Settlement Amount. This application is being made in a contemporaneously filed separate motion.

As preliminarily determined by the Court, the settlement is fair, reasonable, and confers a

substantial benefit upon the classes. Further, the classes satisfy all of the requirements of a settlement class. Accordingly, under 29 U.S.C. § 216(b) and Fed. R. Civ. P. 23(e), Plaintiffs request that the Court grant final approval of the Class and Collective Action Settlement Agreement.

## II.  PROCEDURAL BACKGROUND

This case is part of a series of class and collective action lawsuits against Lowe's Home Centers, Inc. and/or Lowe's HIW, Inc. seeking recover unpaid overtime compensation alleged to be owed to LPMs. Two of the prior lawsuits were in California, one was in Florida, and another was in Colorado. The parties in those cases were represented by the same counsel as in this case.[1] The parties engaged in extensive legal research, fact investigation, and discovery in the prior cases.

On April 21, 2011, the parties in these cases attended mediation in New York before Michael E. Dickstein, Esq. Mr. Dickstein is an experienced mediator who has presided over numerous class and collective action mediations. Because of the history of litigation on the same LPM classification issue between the same counsel, the parties agreed to a global national settlement. The Parties presented the settlement to this Court and, on January 26, 2012, the Court entered an order preliminarily approving the settlement, conditionally certifying the classes, and ordering the notice process to begin. [ECF No. 36] The Parties and Administrator have completed the notice process as explained below, and Plaintiffs now seek final approval before this Court.

---

[1] Richard J. (Rex) Burch and Michael A. Josephson were counsel for the plaintiffs in the California class actions; C. Ryan Morgan was counsel for the plaintiffs in the Florida and Colorado collective actions. Hunton & Williams LLP, Defendants' counsel here, represented the respective defendants in those cases.

### III. THE SETTLEMENT AND NOTICE PROCESS

The proposed settlement resolves all wage and hour claims of the Plaintiffs and the proposed classes against Defendants. While the Court is already familiar with the terms of the Settlement Agreement, a summary follows:

#### A. The Plaintiff Class and the Rule 23 Class.

The "Plaintiff Class" shall be defined as all persons who were employed by one of the Defendants as a LPM at any time from July 5, 2008 through the date on which the Court granted preliminary approval, which was January 26, 2012. A member of the Plaintiff Class (as well as any member of the Rule 23 Class) who submitted a timely and properly completed Claim Form is a "Settlement Class Member."

The "Rule 23 Class" is all persons who were employed as a LPM at any time from February 1, 2011 through the date the Court granted preliminary approval in California; all persons who were employed by LHIW or LHC as a LPM at any time from July 5, 2008 through the date the Court granted preliminary approval here (January 26, 2012) in North Carolina, Pennsylvania, Ohio, Washington, New Jersey, South Carolina, Colorado, or Oregon; and all persons who were employed by LHC as a Loss Prevention Manager at any time from July 5, 2005 through the date the Court granted preliminary approval here (January 26, 2012) in New York.[2]

The Plaintiff Class and Rule 23 Class exclude any person who previously settled or released all of the claims covered by the settlement, or any person who previously was paid or received awards through civil or administrative actions for all of the claims covered by the

---

[2] The statute of limitations applicable to claims for unpaid overtime under New York's Labor Law is six years. Art. 19, N.Y. Lab. Law § 663(3).

settlement. In addition, all members of the Plaintiff Class and/or of the Rule 23 Class who were also members of the classes certified for settlement purposes in the lawsuits styled as *Michael Meyer v. Lowe's HIW, Inc.,* Case No. CV-09-08354-DDP (RZx) (C.D. Cal.) and *Zachary Torres, et al. v. Lowe's HIW, Inc.*, Case No. 09-06962-DDP (RZx) (C.D. Cal.) shall only be paid for their pro rata share of claims commencing February 1, 2011, but only if such individuals were employed as a LPM by either of the Defendants on or after February 1, 2011. Similarly, all Plaintiffs (including the named Plaintiff and all LPMs who filed Consents) in the case styled as *Jacob Tankersley, et al. v. Lowe's Home Centers, Inc.*, Case No. 5:09-CV-00142-WTH-GRJ (M.D. Fla.) or in the case styled as *Jacob Tankersley, et al. v. Lowe's Home Centers, Inc.*, Case No. 2010-CA-17994-0, in the Circuit Court of the Ninth Judicial Circuit in and for Orange County, Florida, shall only be paid for their pro rata share of claims commencing August 1, 2010, but only if such individuals were employed as a LPM by either of the Defendants on or after August 1, 2010.

### B. The Settlement Amount.

The proposed settlement obligates Defendants to pay a "Maximum Settlement Amount" of $6,175,000.00. All claims submitted by members of the Plaintiff Class and Rule 23 Class, and all attorneys' fees, costs, penalties, incentive awards and payments to Class Representative, and claims administration expenses shall be paid out of the Maximum Settlement Amount. In addition to the Maximum Settlement Amount, Defendants shall be responsible for paying all employer-paid withholding and payroll taxes and similar expenses (including state and federal income taxes, social security contributions and unemployment taxes) including FUTA and the employer's share of FICA and Medicare taxes as required by law with respect to settlement payments to members of the Plaintiff Class and Rule 23 Class. The members of the Plaintiff

Class and Rule 23 Class will be responsible for their own tax obligations.

In addition to the monetary settlement, Defendants agreed to – and did - reclassify the LPM position as non-exempt from the overtime laws. This reclassification creates ongoing benefits for LPMs and LPMs now receive overtime for hours worked in excess of the applicable statutory maximum workweek (or, if required by state law, maximum workday).

### C. Payments to Named Class Representatives.

Plaintiffs will receive $2,500 each from the Maximum Settlement Amount in addition to their share of the settlement as members of the Plaintiff Class. In additional consideration for this payment, Plaintiffs will execute a separate general release in favor of Defendants.

### D. Fees, Costs and Expenses of the Administrator.

The parties have agreed to and seek Court approval that the fees, costs and expenses of Kurtzman Carson Consultants ("Administrator") be paid out of the Maximum Settlement Amount.

### E. Allocation to Class Members.

Each Settlement Class Member's "Individual Settlement Award" shall equal each Plaintiff Class Member's proportionate share of the Potential Gross Individual Settlement Proceeds as determined by the compensation earned by each individual Settlement Class Member during the Class Period divided by the total compensation paid to all Plaintiff Class Members during the Class Period. Compensation will be determined based on the amounts reported on the Class Members' W-2 forms. The Individual Settlement Awards will be allocated as alleged unpaid wages, which will be reported to the IRS on Form W-2. The Administrator will pay out all claims submitted by Settlement Class Members, out of a qualified settlement fund, on a confidential basis and issue IRS tax forms.

Any member of the Plaintiff Class or Rule 23 Class who did not become a Settlement Class Member shall not receive any Individual Settlement Award or any Claimed Settlement Amount. Any portion of the Potential Gross Individual Settlement Proceeds that is not distributed to the Plaintiff Class shall be retained by Defendants.

Portions of any Individual Settlement Award not subject to withholding, if any, will be issued with a 1099 form. Defendants shall report the taxes withheld from the wages of each Settlement Class Member as required by law via a W-2 form, and shall immediately pay over all such withheld funds, plus the employer's contribution, to the appropriate State and Federal taxing authorities.

Defendants shall fund the settlement only up to the extent necessary to cover all claims, fees, costs and awards, and Defendants shall retain any portion of the Maximum Settlement Amount not paid out as attorneys' fees, expenses and costs; incentive fees; costs of administration; or Individual Settlement Awards.

**F.     Administration of Notice, Opt-Out, Opt-In and Objections Process.**

The Court preliminary approved the notice process dictated by the Settlement Agreement. [ECF No. 36]  The Parties used Kurtzman Carson Consultants, an experienced claims administrator, to administer the notice process. The Administrator conducted the notice process as approved by this Court, including the mailing of notices and the reminder postcard, receipt of claim forms, exclusion forms, and other items described in the settlement agreement. Attached as Exhibit A is the Declaration of Phil Cooper describing the notice procedure undertaken by Kurtzman Carson Consultants. During the notice process, 1090 class members submitted claim forms (60% of the class), fifteen class members requested exclusion (0.8% of the class), and not one class member served an objection to the settlement.

### G. Payments to Settlement Class Members.

Net payments to Settlement Class Members (including any Court-approved incentive awards to the Class Representatives) shall be made no later than 10 business days after the date on which the time to challenge any aspect of this settlement by appeal has lapsed, provided that no such appeal has been filed (regardless of whether any objections to the settlement were made). If any such appeal is filed, Net Payments to Settlement Class Members shall be made no later than 10 business days after a final resolution of all appeals that result in the upholding of the parties' settlement. Defendants have the option of either directly issuing payroll checks or to pay on a rolling, claims made basis to the Administrator who will then be responsible for making appropriate payroll deductions and reporting obligations and issuing the Individual Settlement Awards.

### H. Release of Claims.

In exchange for the settlement, members of the Rule 23 Class who do not opt-out and the members of the Settlement Class will release Defendants from all wage and hour claims asserted or that could have been asserted in this lawsuit.

## IV. COLLECTIVE ACTION AND CLASS ACTION SETTLEMENT AND APPROVAL PROCEDURE.

When reviewing a proposed FLSA settlement, the district court must "scrutiniz[e] the settlement for fairness" and decide whether the proposed settlement is a "fair and reasonable resolution of a bona fide dispute over FLSA provisions." *Lynn's Food Stores v. United States*, 679 F.2d 1350, 1353, 1355 (11th Cir. 1982). Similar to the Rule 23 context, the endorsement of a proposed FLSA settlement by counsel for both parties is a "factor that weighs in favor of approval" of an FLSA settlement agreement because "counsel for each side possess[es] the unique ability to assess the potential risks and rewards of litigation." *Quintanilla v. A&R*

*Demolition, Inc.*, No. 04-cv-1965, 2008 U.S. Dist. LEXIS 37449, at *14 (S.D. Tex. May 7, 2008).

Similarly, a class action under Rule 23 may not be dismissed, compromised, or settled without the approval of the Court. Fed. R. Civ. Pro. 23(e). The settlement as a whole, rather than the component parts, is the proper level of inquiry. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998). The proposed settlement must "stand or fall in its entirety" and the Court may not "delete, modify or substitute certain provisions." *Id.* at 1026. The private consensual decision of the parties is entitled to deference. *Id.* at 1027.

V. **THIS COURT SHOULD CERTIFY THE CLASSES AND FULLY APPROVE THE SETTLEMENT**

Here the Court has preliminarily approved the settlement and conditionally certified the classes under Rule 23. [DE 36] For the same reasons that this Court certified the classes under Rule 23(a) and Rule 23(b)(3), and as more fully articulated in the Joint Motion for Preliminary Approval [DE 34], this Court should grant final certification[3] of the class and collective actions here under the same provisions.

Pursuant to Rule 23(e)(2) the Court may approve a settlement after a hearing and "on finding that is it fair, reasonable, and adequate." A settlement is fair, adequate and reasonable, and therefore merits final approval, when "the interests of the class are better served by the settlement than by further litigation." *Manual for Complex Litigation Fourth* (Fed. Judicial Center 2004), § 21.6 at 309.

### A. The Settlement is Fair, Reasonable and Adequate.

The settlement here is more than fair and reasonable and should be finally approved by this Court. The settlement provides substantial monetary relief totaling $6,175,000.00, inclusive

---

[3] Defendants do not agree that certification of any class would be appropriate outside of the settlement context.

of fees and costs. The settlement also provides non-monetary relief, i.e., Defendants are reclassifying LPMs as non-exempt.

The reasonableness of the proposed settlement is underscored by the fact that Defendants have significant legal and factual grounds available to defend this action. Defendants dispute that members of the Plaintiff Class or Rule 23 Class were improperly misclassified as exempt and contend that they were provided all compensation as required by law. Defendants cite to several recent decisions to support their classification decision and the denial of class certification, including a Department of Labor opinion letter which held loss prevention managers to be exempt. *See, e.g., Mullins v. Target Corp.*, 2011 WL 1399262 (N.D. Ill. Apr. 13, 2011); *Juback v. Radioshack Corp.,* 2009 WL 1259990 (M.D. Fla. May 6, 2009); *U.S. Dep't of Labor Wage & Hour Div. Op. Ltr.*, No. FLSA 2006–30 (Sept. 8, 2006).

Class Counsel cite to other decisions in support of their contention that LPMs were misclassified as exempt, and that class certification is appropriate. *Gilliam v. Montgomery Ward & Co., Inc*., 121 F.3d 698 (4th Cir. 1997) (unpublished, table decision) (fact questions precluded resolution of exempt status of loss prevention manager); *Davis v. Abercrombie & Fitch Co*., 2008 WL 4702840 (S.D.N.Y. Oct. 23, 2008) (certifying class of Loss Prevention Agents for collective treatment). However, Class Counsel recognizes that litigation would be costly and risky to the class. For the Plaintiffs to prevail, Class Counsel would first have to litigate class certification (both for the FLSA collective action and under Rule 23 for the state sub classes), establish class-wide liability, and then prove up various issues regarding damages and penalties. An adverse decision against either side, on either certification or the merits, would likely result in an appeal (further delaying resolution of this matter). Such efforts would likely take years. By contrast, the settlement ensures timely and substantial relief.

A review of the range of recovery also weighs in favor of approving the settlement. Had Plaintiffs recovered the full eight hours[4] of overtime during a two year statute of limitations, the overtime damages (calculated from data disclosed by Defendants) would have equaled $6,030,790.00. Defendants had a likely defense to liquidated damages and a willful violation of law based upon their reliance on the Department of Labor opinion letter described above which found loss prevention managers to be exempt.[5] Here, the settlement provides monetary compensation in the amount of $6,175,000.00, in excess of the base overtime damages notwithstanding Defendants' substantial legal and factual defenses. This recovery is substantial, and must be judged as "a yielding of absolutes and an abandoning of highest hopes…Naturally, the agreement reached normally embodies a compromise; in exchange for the saving of cost and elimination of risk, the Parties each give up something they might have won had they proceeded with litigation…" *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 624 (9th Cir. 1982). In light of these issues, the recovery is more than fair, reasonable and adequate.

### B. The Settlement Resulted from Non-Collusive, Arm's-Length and Informed Negotiations.

Counsel for both Plaintiffs and Defendants have previously engaged in extensive litigation regarding the classification of LPMs employed by Defendants dating back to 2009. *See supra*. In connection with those prior lawsuits, counsel for the parties engaged in substantial formal discovery and informal investigation, and researched extensively the legal and factual issues relating to the claims and defenses asserted in the misclassification cases brought by LPMs, including the allegations and defenses alleged in this lawsuit. Counsel for the parties

---

[4] The schedule worked by LPMs included a 48 hour workweek.

[5] An employer can defeat liquidated damages if it can show "good faith and that [it] had reasonable grounds for believing that [the] act or omission was not a violation" of the FLSA. *See* 29 U.S.C. § 260. Additionally, claims for overtime compensation under the FLSA are limited to two years, except in cases where a "willful violation" occurs, in which case the statute of limitations would be three years. *See* 29 U.S.C. § 255(a).

prepared for and engaged in formal mediation. The mediation process involved pre-mediation conferences, a full-day mediation conference in New York on April 21, 2011, and post-mediation communications and negotiations. The mediation was presided over by an experienced mediator, Michael E. Dickstein, Esq.

In reaching settlement, counsel on both sides relied on their respective substantial litigation experiences in similar employment class actions, and thorough analysis of the legal and factual issues presented in this case as described above. Information gleaned from investigation and discovery contributed to the Parties' assessment of the strengths and weaknesses of the case and the benefits of the settlement. Both parties have been through significant fact finding and legal analysis, and have exhaustively evaluated the issues.

### C. The Class Responded Positively to the Settlement.

During the notice process, over 60% of the class submitted timely claim forms to join this settlement, and less than 1% of the class requested exclusion.[6] *See* Ex. A at ¶19 . This opt-in percentage rate is much higher than in many other FLSA cases, supporting a finding that this proposed settlement is reasonable and fair. *See* Andrew Brundsen, *Hybrid Class Actions, Dual Certification, and Wage Law Enforcement in the Federal Courts*, Berkeley J. Emp. & Lab. L., 269, Volume 29 (2008) (giving empirical data for twenty-one (21) collective actions and finding that the average opt-in participation rate was 15.71%. Only one case cited had an opt-in participation rate higher than 40%). Also, in *Westerfield v. Washington Mutual Bank*, 2009 WL 5841129 (S.D.N.Y. 2009), the Court there authorized class notice to be sent on an FLSA action, which resulted in 1,067 consents being returned. *Id.* at *1. Later in the litigation, the Court ordered notice to be sent again to the class members by Rule 23 procedures, which sent notice to

---

[6] Additionally, 70% of the class fund by amount has been claimed. Ex. A. at ¶20.

the 4,974 class members. *Id.* at *2. Therefore, when the "opt-in" notice was sent, 1,067 people out of the 4,974 class members joined, equaling 21.5% of the class. *See also Mohney v. Shelly's Prime Steak, Stone Crab &Oyster Bar*, 2009 WL 5851465, at *2 and *4 (S.D.N.Y. 2009) (541 class members returned claim forms out of 1,323 notices sent, or 40.9% return rate, even though the Court found that the "settlement amount plus interest is substantial and the settlement includes meaningful injunctive relief.") Here, the 54% opt-in rate is significantly higher than the majority of the cases cited, which supports a finding that the settlement terms were well received by the class and that this proposed settlement is fair and reasonable and should be fully and finally approved.

Furthermore, not one class member served an objection to this settlement during the notice process. This further shows that the settlement was well received and is reasonable. *See In re Apollo Group Inc. Securities Litigation*, 2012 WL 1378677, *3 (D. Ariz. April 20, 2012) ("There have been no objections from Class Members or potential class members, which itself is compelling evidence that the Proposed Settlement is fair, just, reasonable and adequate.")

### D. The Incentive Payments to the Named Plaintiffs Are Reasonable.

The proposed incentive payments of $2,500 each to Pastorius and Starr are intended to recognize their initiative and efforts on behalf of the Plaintiff Class and Rule 23 Class, and their execution of general releases (as opposed to the limited releases executed by the remainder of the Settlement Class Members). The important contribution of the named Plaintiffs is well noted. Each agreed to put his name on federal complaints, and each participated in the investigation and prosecution of this matter. Thus, a total of $5,000.00 will be deducted from the Maximum Settlement Amount. Courts routinely approve incentive awards to compensate named plaintiffs for the services they provide and the risks they incur during class action litigation. *McClain v.*

*Lufkin Ind., Inc.*, No. 9:97CV63, 2009 WL 5814124 at *4 (E.D. Tex. Dec. 22, 2009). See also Herr, *Manual for Complex Litigation*, §30.42 (West Group 2001) (noting that such awards "may sometimes be warranted for time spent meeting with class members or responding to discovery").

### E. The Proposed Notice Was Reasonable.

To protect the rights of absent class members, the court must provide the best notice practicable to class members of a potential class action settlement. *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 811-12 (1985). A class action settlement notice "is satisfactory if it 'generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard.'" *Churchill Village, LLC v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004). Here, the Court previously approved the notice process as fair, and the Parties undertook the notice process through an experienced administrator without delay or difficulties. Thus, the Parties have complied with Fed. R. Civ. Pro. 23(e)(1) by directing notice to all class members in a reasonable manner.

### VI.   CONCLUSION.

For the reasons set forth above and as found by this Court in its order preliminarily approving this settlement [ECF No. 36], Plaintiffs respectfully request this Court (1) grant final approval of the settlement, (2) grant final class certification and collective action designation of the settlement, and (3) issue the Proposed Order Granting Final Approval (attached as Exhibit B) and Final Judgment (attached as Exhibit C).

Respectfully submitted this 2nd day of May, 2012.

        **/s/ Michael A. Josephson**
        Michael A. Josephson, Esq.
        S.D. Tex. No. 27157
        State Bar No. 24014780
        FIBICH, HAMPTON, LEEBRON, BRIGGS &
        JOSEPHSON, L.L.P.
        1150 Bissonnet
        Houston, Texas 77005
        Telephone:  (713) 751-0025
        Facsimile:  (713) 751-0030
        E-mail: mjosephson@fhl-law.com

        Richard J. (Rex) Burch, Esq.
        S.D. Tex. No. 21615
        State Bar No. 24001807
        BRUCKNER BURCH, P.L.L.C.
        8 Greenway Plaza, Suite 1500
        Houston, Texas 77002
        Telephone:  (713) 877-8788
        Facsimile:  (713) 877-8065
        E-mail: rburch@brucknerburch.com

        C. Ryan Morgan, Esq.
        *Admitted Pro Hac Vice
        Florida Bar No. 0015527
        MORGAN & MORGAN, P.A.
        20 North Orange Avenue, 16th Floor
        P.O. Box 4979
        Orlando, Florida 32802-4979
        Telephone:  (407) 420-1414
        Facsimile:  (407) 420-5956
        E-mail: rmorgan@forthepeople.com

        **Attorneys for Plaintiffs**

## CERTIFICATE OF SERVICE

This is to certify that a copy of the above and foregoing motion has been served in accordance with the Federal Rules of Civil Procedure via electronic filing on this 2nd day of May, 2012.

        /s/Michael A. Josephson
        Michael A. Josephson